UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLYDE BOGLE,<br>      Plaintiff,<br><br>      v.<br><br>UMASS CORRECTIONAL HEALTH<br>SERVICES, ET AL.,<br>      Defendants. | C.A. No. 12-12348-NMG |

## MEMORANDUM AND ORDER

GORTON, D.J.

### BACKGROUND

On December 14, 2012, Plaintiff Clyde Bogle ("Bogle"), a prisoner in custody at MCI Norfolk, filed this civil rights action pursuant to 28 U.S.C. § 1983 against a number of prison officials, prison medical staff and medical facilities.[1] He alleges that the Defendants were deliberately indifferent to his serious medical needs. Specifically, he alleges that due to incorrect surgical procedures in July, 2008, his left eye has a hole in it, causing him to go blind in that eye, and to have an eye infection. He contends no corrective measures have been put in place by the Defendants. Additionally, Bogle alleges that he suffers from a serious mouth infection and gum disease, causing his gums to bleed and swell, and causing his teeth to be deformed (*i.e.*, pushed to the back of his mouth). He claims to be in constant pain and to have

---

[1] The Defendants include: (1) UMass Correctional Health Services ("UMCH"); (2) Maureen Atkins, Health Services Administrator/Clinical Administrator; (3) Dyana Nickl, Program Risk and Compliance Coordinator of UMCH; (4) Tufts Medical Center and Floating Hospital for Children ("Tufts"); (5) Luis Spencer, Commissioner of Correction; (6) Gary Roden, Superintendent of MCI Norfolk; (7) Lawrence Weiner, Assistant Deputy Commissioner of Clinical Services for the Department of Correction; (8) Thomas Groblewski, Statewide Medical Director for UMCH, and (9) unnamed others. Bogle contends that both UMCH and Tufts are contracted with the Department of Correction to provide medical services to prisoners. The Defendants are sued in both official and individual capacities.

difficulty eating, and that this condition has been ongoing for five years. He was told by a dentist that his teeth and gums needed repair, and that he would extract Bogle's teeth and provide him with false teeth. Bogle questioned this course of action. He claims he continues to have dental problems. Further, he contends that he went to Defendant Maureen Atkins about this matter, but she failed to launch an independent investigation and failed to correct the problem. She also denied his medical grievance. Additionally, he contends that he filed an institutional grievance, advising Defendants Roden, Weiner, and Spencer about his medical problems. He was told by them that they were not obligated to deal with his medical treatment and that this matter was solely within the purview of UMCH.

Next, Bogle contends that he made a demand on Tufts; however, it refused to accept responsibility for the actions of the medical staff who performed surgery on him.[2] Further, Bogle claims that UMCH and Defendant Groblewski decided that Bogle had not grieved the matter properly and denied him proper treatment for his mouth and eye.

With respect to his theories of liability against each Defendant, Bogle asserts claims only pursuant to 42 U.S.C. § 1983 based on alleged Eighth Amendment violations. Specifically, he claims UMCH was deliberately indifferent to his serious medical needs; Maureen Atkins failed to perform her duty to compel the health service unit at MCI Norfolk to treat his eye and diseased mouth; Thomas Groblewski failed to treat his eye and mouth conditions properly;Tufts failed to correct the incorrect surgical procedures; Lawrence Weiner has failed to provide him

---

[2] In an exhibit attached to Bogle's Complaint, the claims administrator for Tufts denied Bogle's demand for $100,000.00 for the alleged improper surgery and treatment of his left eye, because the administrator's investigation revealed that his cataract surgery was not the cause of the hole in his retina; rather, the hole in the retina was caused by a separate incident apart from the cataract surgery. See Letter (Docket No. 1-1 at 9, dated October 31, 2012).

proper medical care; Dyana Nickl failed to insure that he received proper medical treatment to his eye and diseased mouth; and the Department of Correction, Gary Roden, and Lawrence Weiner were deliberately indifferent to his serious medical needs.

As relief, Bogle seeks compensatory and punitive damages.

Along with the Complaint and attached exhibits, Bogle filed a Motion to Appoint Counsel (Docket No. 2), and a Motion for Leave to Proceed *in forma pauperis* (Docket No. 3). On December 18, 2012, this Court issued a Procedural Order (Docket No. 6) denying Bogle's Motion for Leave to Proceed *in forma pauperis* without prejudice to renew within 21 days by refiling a motion and submitting his certified prison account statement.

On January 2, 2013, Bogle filed a renewed Motion for Leave to Proceed *in forma pauperis* and a certified prison account statement (Docket No. 8).

DISCUSSION

I.    The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Bogle's financial disclosures and prison account statement, this Court finds that he lacks sufficient funds to pay the filing fee for this civil action. Accordingly, his renewed Motion for Leave to Proceed *in forma pauperis* (Docket No. 8 ) will be ALLOWED.

Because Bogle is a prisoner, however, he is obligated to make payments toward the $350.00 filing fee, pursuant to the Prison Litigation Reform Act ("PLRA"). See 28 U.S.C. § 1915 (the *in forma pauperis* statute). Accordingly, it is hereby Ordered that:

A.    Bogle is assessed an initial partial filing fee of $ 229.07, pursuant to 28 U.S.C. § 1915(b)(1)(B);[3]

---

[3]The initial partial assessment represents 20% of the average monthly balance in Bogle's personal prison account. This calculation was manually made based on the figures provided by

B. The remainder of the fee $120.93 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions filed by Bogle; however, for purposes of clarification for crediting any funds received from him, this Court intends that any funds received from his prison account first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.

II. Screening of the Complaint

Because Bogle is a prisoner, he is subject to the provisions of the PLRA, Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant the court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities). Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). Section 1915A authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law

---

the Treasurer's Office at MCI Norfolk. The initial partial assessment is made regardless of whether or not Bogle currently has sufficient funds in his prison account to pay (it appears from his account statement that he does have sufficient funds). The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist." 28 U.S.C. § 1915(b)(1).

or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

In connection with the preliminary screening, Bogle's *pro se* Complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000). However, even under a broad reading, some if not all of Bogle's claims are subject to dismissal for the reasons set forth below.

III.  Failure to Plead Plausible Claims in Accordance with Fed. R. Civ. P. 8; Failure to State Claims for Deliberate Indifference to a Serious Medical Need

Rule 8(a) requires a plaintiff to include in a complaint, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "['] meaningful opportunity to mount a defense.'" Diaz–Rivera v. Rivera–Rodriguez, 311 F.3d 119, 123 (1st Cir. 2004) (quoting Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)); see Redondo–Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as in any other action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriquenos en Action v. Hernandez, 367 F.3d 61, 68 (1st Cir.2004). Although "the requirements of Rule 8(a)(2) are minimal ... [,] 'minimal requirements are not tantamount to nonexistent requirements.'" Id.

(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Here, this Court credits that Bogle has attempted to parcel out his allegations against each Defendant separately; however, apart from the allegations that each of the Defendants had a duty to provide him proper medical care and that each breached that duty, he fails to comply with Rule 8's pleading requirements to set forth relevant underlying facts from which "deliberate indifference" by each Defendant reasonably could be inferred.  Bogle's bald allegations -- which, as pled, amount only to legal conclusions, are not sufficient to state plausible claims. Bogle fails to plead any underlying facts to show these Defendants had the requisite state of mind to set forth a deliberate indifference claim.[4]

Next, with respect to Bogle's claims against prison officials, the fact that these Defendants denied his internal grievances does not, in and of itself, provide the requisite factual background.  The failure of Defendants to answer grievances or deny grievances does not have constitutional implications because there is no constitutionally protected interest in the grievance procedures.[5]  Additionally, Bogle's allegation that prison officials refused to intervene in his

---

[4]Courts consistently have refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.  See e.g. Estelle v. Gamble, 429 U.S. 97, 106 (1976); DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991) (same).  Only "deliberate indifference" to the serious medical needs of prisoners violates the Eighth Amendment.  Estelle, 429 U.S. at 106.  Deliberate indifference is "conduct that offends evolving standards of decency in a civilized society."  DesRosiers, 949 F.2d at 18 (citations omitted).  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed."  Estelle, 429 U.S. at 104-05.

[5]See Piper v. Alford, No. 02-2640-P, 2003 WL 21350215, at *2 (N.D.Tex. 2003) (holding that an inmate "does not have a constitutional entitlement to an adequate grievance procedure" and the ineffectiveness or even absence of a grievance procedure does not give rise

medical care (based on their position that medical treatment only is within the purview of the contractual health care providers) does not raise a reasonable inference of deliberate indifference by these Defendants. This particularly is true where the Department of Correction regulations provide that medical decisions are to be left solely to the medical professionals, and prison administrators are not authorized to interfere. See 103 DOC 610.01(2) (eff. April 2012) (providing that "[m]atters of medical, mental health and dental judgment are the sole province of the responsible physicians, psychiatrists or dentists."). In other words, the fact that prison officials declined to impose their own judgment on what constitutes Bogle's proper medical care, does not raise a reasonable inference that their actions or inactions constituted deliberate indifference. Where UMCH (and/or Tufts), as the contractual health care providers, had the sole authority to diagnose and treat Bogle, the role of the prison officers is limited to the determination of what course of action to take that is consistent with a recommended treatment plan vis-a-vis prison administration and security. Here, Bogle provides no factual basis to suppose that these officials acted contrary to medical recommendations such that deliberate indifference could be inferred.

     Similar pleading deficiencies exist with respect to the medical Defendants. The mere fact that Bogle did not receive the treatment he deems to be proper does not raise an inference of deliberate indifference. Without some other underlying factual information demonstrating the

---

to a constitutional claim); see also Leavitt v. Allen, 46 F.3d 1114, 1995 WL 44530, at **2 (1st Cir. 1995) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); accord Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted); Sandin v. Conner, 515 U.S. 472 (1995).

requisite state of mind, Bogle fails to plead plausible claims as to these Defendants as well.[6]

Finally, it is noted that Bogle's surgery took place in 2008, and that he claims his gum condition has been ongoing for five years. Thus, this Court questions whether some or all of his civil rights claims are time-barred as beyond the three-year statute of limitations for § 1983 claims.[7] Since Bogle fails to provide any information concerning the dates upon which the Defendants are alleged to have been deliberately indifferent, this Court makes no definitive determination in this regard; however, this failure to provide the "when" information (along with the "what and why" information) also makes Bogle's claims subject to dismissal under Rule 8.

Apart from the deficiencies noted above, there is another problem with Bogle's Complaint.

IV.     Lack of *Respondeat Superior* Liability of Defendants UMCH and Tufts

As noted above, Bogle asserts all of his claims under 42 U.S.C. § 1983 based on alleged Eighth Amendment violations. His claims against UMCH and Tufts (and, for that matter, against any supervisory Defendant) which are based on the actions or inactions of its employees or subordinates, do not state claims upon which relief may be granted under 42 U.S.C. § 1983. There is no *respondeat superior* liability in § 1983 actions. "It is well-established that 'only

---

[6] With respect to Tufts, Bogle's claims, read liberally, amount only to the failure of Tufts to take responsibility for the negligence of its medical surgical staff in performing his eye operation. There simply are no allegations set forth whatsoever concerning the "deliberate indifference" of Tufts.

[7] In the District of Massachusetts, the statute of limitations for claims under the Civil Rights Act is three years. Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001) (§ 1983); Govan v. Trustees of Boston Univ., 66 F. Supp. 2d 74, 80 (D. Mass. 1999) (§ 1981, 1985). Cf. Rodriguez-Garcia v. Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004) (§§ 1981, 1983, and 1985 borrow the forum state's statute of limitations for personal injury claims); Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for personal injury claims); Owens v. Okure, 488 U.S. 235 (1989).

those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 146, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).

Accordingly, Bogle's claims against UMCH and Tufts are subject to dismissal.

V.      Order to Show Cause and File an Amended Complaint

In light of the above, the Court will dismiss this action unless, within 42 days of the date of this Memorandum and Order, Bogle demonstrates good cause in writing why the claims should not be dismissed.  In filing a show cause response, Bogle should not reiterate his claims; rather, he should address the legal impediments discussed above (*i.e.*, lack of *respondeat superior* liability, the failure to comply with Rule 8, and failure to state plausible claims upon which relief may be granted).

Additionally, Bogle must file, within the 42 day period, an Amended Complaint that comports with Rule 8.  The Amended Complaint must set forth sufficient factual information regarding the basis for the legal cause of action against each Defendant, so that the Defendants have sufficient notice of the claims against them and are able to file a meaningful response to those claims.

Failure to comply with these directives will result in a dismissal of this action.

VI.     The Motion to Appoint Counsel

Bogle seek appointment of *pro bono* counsel.  As grounds for his motion, he contends that this case involves complex issues involving his serious medical condition, that he continues to suffer from these conditions, and that he is illiterate and cannot read or write and thus is unable to prosecute this action on his own.  He indicates that his pleadings have been created for

him by a jailhouse lawyer, Tony Gaskins.

The decision to appoint counsel is discretionary, and a plaintiff does not have a constitutional or statutory right to appointed counsel. Dellenbach v. Hanks, 76 F.3d 820, 823 (7th Cir. 1996) cert. denied, 519 U.S. 894 (1996). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in a fundamental unfairness impinging on the party's due process rights. See DesRosiers, 949 F. 2d at 23. See also Manisy v. Maloney, 283 F. Supp. 2d. 307, 317 (D. Mass. 2003).

Bogle's assertions of his difficulties in prosecuting this action, combined with the seriousness of his alleged medical conditions, indeed are troubling for this Court. Nevertheless, in light of the various legal impediments to Bogle's claims as discussed in this Memorandum and Order, this Court questions the likelihood of success on the merits. Thus, at this juncture, this Court cannot find that exceptional circumstances exist that would warrant the appointment of *pro bono* counsel and the expenditure of the scarce *pro bono* resources of the District Court. Moreover, absent a response from the Defendants with respect to the merits, this Court cannot gauge adequately the propriety of appointing *pro bono* counsel.

Accordingly, the Plaintiffs' Motion for Appointment of Counsel (Docket No. 2) will be DENIED without prejudice to renew after the Defendants have filed a response to the Amended Complaint, if this action is permitted to proceed further.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1. Plaintiff's renewed Motion for Leave to Proceed *in forma pauperis* (Docket No. 8) is ALLOWED and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion to Appoint Counsel (Docket No. 2) is <u>DENIED</u> without prejudice to renewing after the Defendants have filed a responsive pleading;

3. Within 42 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why this action should not be dismissed for the reasons stated herein; and

4. Within 42 days of the date of this Memorandum and Order, Plaintiff shall file an Amended Complaint that comports with Rule 8, setting forth plausible claims upon which relief may be granted.

SO ORDERED.

/s/ Nathaniel M. Gorton
NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE

DATED: January 15, 2013